

ENTERED
03/20/2018

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| IN RE: § | |
| JAMES W. MCCRACKEN, *et al* § | CASE NO: 17-80084 |
| Debtor(s) § | |
| § | CHAPTER 13 |
| § | |
| HERITAGE BANK § | |
| Plaintiff(s) § | |
| § | |
| VS. § | ADVERSARY NO. 17-8009 |
| § | |
| JAMES W. MCCRACKEN § | |
| Defendant(s) § | |

### MEMORANDUM OPINION

Heritage Bank filed this adversary proceeding against James W. McCracken to determine the dischargeability of certain debt owed to it by McCracken. Heritage alleges that McCracken's debts to it are nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(B) and, alternatively, 11 U.S.C. § 727(a)(3). Heritage moved for summary judgment on its nondischargeability claims.

Heritage's motion for summary judgment is granted as to his § 523(a)(2)(B) claim. Heritage's motion is denied as to his § 727(a)(3) claim.

### Background

McCracken applied for a loan from Heritage in May 2015. (ECF No. 23 at 2). As part of his loan application, McCracken submitted his 2010, 2011, 2012, and 2013 tax returns, as well as a financial statement dated May 5, 2014. (ECF No. 23 at 2). The May 5 financial statement listed McCracken's net worth as $734,000.00, which included $217,000.00 worth of cattle and bulls, and $626,000.00 in total liabilities, which included $160,000.00 in livestock liabilities. (ECF No. 23-2 at 1). Based upon the value of McCracken's cattle, a portion of which he pledged as collateral for the loan, McCracken executed and delivered a promissory note to Heritage in the

amount of $100,000.00 on June 12, 2014.  (ECF No. 23 at 2).  McCracken executed and delivered to Heritage a security agreement securing his repayment of the June 2014 note, granting Heritage a security interest in all of McCracken's cattle, the proceeds of those cattle, and McCracken's entire inventory (including farm products, feed, and supplies).  (ECF No. 23 at 2–3; ECF No. 23-4).  Heritage perfected its security interest in the collateral through a UCC Financing Statement on June 17, 2014.  (ECF No. 23 at 3; ECF No. 23-6).  McCracken used the note proceeds to satisfy an existing loan with First State Bank.  (ECF No. 23 at 3).

After the satisfaction of McCracken's First State Bank loan, Heritage understood that it held a first lien on all of McCracken's cattle and that his total livestock debt remained at $160,000.00.  (ECF No. 23 at 3; ECF No. 23-30 at 2).  However, unbeknownst to Heritage prior to the June 2014 note, McCracken owed Prosperity Bank at least $151,323.16 as of May 2014.  (ECF No. 23 at 4; ECF No. 23-23 at 4).  This debt was secured by a lien on the cattle covered by Heritage's security agreement.  (ECF No. 23 at 3; ECF No. 23-30 at 2.  *But see* ECF No. 28 at 2).  Consequently, McCracken apparently understated his total livestock liabilities on his May 5, 2014 financial statement.  (ECF No. 23 at 4).

On July 23, 2014, Heritage agreed to increase the amount of the June 2014 note by $10,000.00 in order for McCracken to purchase additional cattle.  (ECF No. 23 at 5).  McCracken executed and delivered a new note to Heritage in the principal amount of $110,000.00, an updated commercial security agreement covering McCracken's cattle and the proceeds from those cattle, and a business loan agreement.  (ECF No. 23 at 5; ECF No. 23-11; ECF No. 23-12; ECF No. 23-13).

On December 31, 2014, Heritage agreed to again increase McCracken's June 2014 note by $20,000.00 in order for McCracken to purchase additional cattle.  (ECF No. 23 at 6).

McCracken executed and delivered a new note to Heritage in the principal amount of $130,000.00, an updated commercial security agreement covering McCracken's cattle and the proceeds from those cattle, and a business loan agreement. (ECF No. 23 at 6; ECF No. 23-14; ECF No. 23-15; ECF No. 23-16).

On or about February 15, 2015, McCracken submitted a financial statement to Heritage representing his net worth to be $884,600.00, the value of his cattle to be $272,000.00, and his total liabilities to be $515,000.00 (including a cattle loan of $160,000.00). (ECF No. 23 at 6; ECF No. 23-17). Heritage alleges that this financial statement was inaccurate because it failed to list a liability to Prosperity Bank of at least $178,123.61 secured by McCracken's cattle. (ECF No. 23 at 6–7; ECF No. 23-8 at 5).

In April 2016, Heritage learned of McCracken's debt to Prosperity Bank and the related lien on McCracken's cattle. (ECF No. 23 at 7; ECF No. 23-30 at 3). Heritage determined Prosperity Bank's lien on the cattle to be superior to its own lien. (ECF No. 23 at 7; ECF No. 23-30 at 3). Consequently, Heritage agreed to loan McCracken funds to satisfy his debt to Prosperity Bank in order to secure a first lien position for Heritage on all of McCracken's cattle. (ECF No. 23 at 7; ECF No. 23-30 at 3). Heritage consented to this transaction because the cattle's value, as listed within McCracken's financial statements, was sufficient to cover the debt owed to it by McCracken in addition to the amount required to satisfy Prosperity Bank's first lien. (ECF No. 23 at 7). Heritage asserts that it would not have extended any additional credit to McCracken but for this perceived value of the cattle. (ECF No. 23 at 9). McCracken completed this transaction by executing and delivering a revised note to Heritage in the principal amount of $250,000.00, an updated commercial security agreement covering McCracken's cattle and the proceeds from those cattle, and a business loan agreement on or about June 30, 2016. (ECF No.

23 at 7; ECF No. 23-19; ECF No. 23-20; ECF No. 23-21). Heritage perfected this security interest through a UCC Financing Statement on September 1, 2016. (ECF No. 23-22).

Prior to the June 2016 note's approval, McCracken provided Heritage with an updated financial statement dated May 6, 2016. (ECF No. 23 at 8; ECF No. 23- 23). Heritage alleges that this statement was inaccurate because it failed to include amounts owed to Prosperity Bank before their satisfaction. (ECF No. 23 at 8). McCracken also provided Heritage with a copy of his 2015 tax return, which listed the value of his cattle purchased and owned as $357,327.00. (ECF No. 23 at 8; ECF No. 23-25 at 3).

On or about August 30, 2016, McCracken met with a Heritage representative and confirmed that he owned 129 head of cattle as of that date; Heritage subsequently funded the June 2016 note on August 31, 2016. (ECF No. 23-30 at 3). However, on or about February 22, 2017, McCracken advised Heritage that he was unable to pay his debts and was selling his home. (ECF No. 23-30 at 3). Heritage subsequently discovered that McCracken sold most of the cattle securing his debt to Heritage in June 2015 without notice to Heritage. (ECF No. 23-30 at 4; ECF No. 23-31 at 1). The sold cattle remained in the pastures where they were located prior to their sale. (ECF No. 23-31 at 2). McCracken's 2015 tax return—submitted to Heritage and listing the value of his cattle—failed to reflect this sale. (ECF No. 23 at 10; ECF No. 23-24). Because of these factors, Heritage alleges that it could not have known of McCracken's sale of the cattle. (ECF No. 23 at 10).

McCracken refutes Heritage's claim that it did not know of the June 2015 sale, asserting that he remitted the proceeds of the sale—$40,000.00—to Heritage, which was reflected on Heritage's history of the June 2014 note as a $40,000.00 "Payment-Extra to Principal" payment made on June 11, 2015. (ECF No. 23-7 at 1; ECF No. 28-1 at 2).

Upon learning of McCracken's undisclosed sale of his cattle, Heritage declared the June 2016 note to be in default and began to foreclose on the cattle securing its lien. (ECF No. 23 at 11). On February 28, 2017, Heritage filed its original petition and request for injunctive relief in state court (Cause No. 90596-CV) seeking the June 2016 note's balance, a judicial foreclosure of its security interest in the collateral securing the loan, injunctive relief, and a writ for sequestration of certain collateral. (ECF No. 23 at 11).

McCracken and his wife Suzanne McCracken filed for chapter 13 bankruptcy on March 24, 2017. (Case No. 17-80084, ECF No. 1). The McCrackens' bankruptcy Schedule A/B lists that the couple owned only 18 heads of cattle valued at $36,000.00 as of the petition date. (Case No. 17-80084, ECF No. 1 at 16).

On April 28, 2017, Heritage recovered and sold McCracken's 18 remaining cattle. (ECF No. 23 at 11).

On May 19, 2017, McCracken filed a Statement of Financial Affairs in which he claims that he "moved over 100 cattle to Cameron/Maysfield area to avoid the flood. Cattle remained in that area for a number of months. Cattle had not been branded prior to the flood. Over 85 cattle are unaccounted for." (Case No. 17-80084, ECF No. 48 at 5). McCracken asserts that this loss of cattle resulted in $190,000.00 of lost property value. (Case No. 17-80084, ECF No. 48 at 5). Heritage contests McCracken's claim of lost cattle. (ECF No. 23 at 11). Instead, Heritage alleges that McCracken could have owned no more than 42 cattle subsequent to the June 2015 sale. (ECF No. 23 at 12; ECF No. 23-32 at 2; ECF No. 23-33 at 2).

Within its Notice of Rule 2004 Exam of Debtor and Amended Notices, Heritage requested the production of documents regarding all cattle sold, transferred, moved, or unaccounted for by McCracken. (Case No. 17-80084, ECF No. 73 at 2; Case No. 17-80084,

ECF No. 78 at 2; Case No. 17-80084, ECF No. 80 at 2).  McCracken failed to produce any relevant documents.  (ECF No. 23 at 16–17).  On March 29, 2017, Heritage issued a subpoena requesting documents related to McCracken's cattle.  (ECF No. 15 at 5–6).  McCracken responded that he failed to unearth any such documents.  (ECF No. 23 at 18).

After applying all offsets and credit, McCracken is indebted to Heritage in the amount of $228,158.10.  (ECF No. 23 at 19; ECF No. 23-34 at 2).

On May 18, 2017, Heritage filed this adversary proceeding against James W. McCracken in order to determine the dischargeability of the debt owed by McCracken to Heritage.  (ECF No. 1).  Heritage first claims that McCracken's debt to it is nondischargeable under 11 U.S.C. § 523(a)(2)(B) because:

- McCracken's disclosed financial information—including his financial statements and tax returns—induced Heritage into providing McCracken with credit;

- this disclosed financial information was materially false as it related to McCracken's financial condition at the time of the loans because it failed to accurately disclose and account for all of McCracken's assets and liabilities; and

- McCracken executed and delivered this false financial information to Heritage with the intent to deceive Heritage in order to induce it to extend credit to McCracken under the June 2016 note because he prepared and submitted the information knowing that it failed to accurately disclose all of his assets and liabilities. (ECF No. 1 at 9).

Alternatively, Heritage claims that McCracken's debt to it is nondischargeable under 11 U.S.C. § 727(a)(3) because McCracken failed to produce complete and accurate financial records when requested, including documentation related to his cattle and other assets. (ECF No. 1 at 10).

On September 13, 2017, Heritage filed a motion for summary judgment regarding his nondischargeability claims.  (ECF No. 23).  McCracken filed a response to Heritage's motion for summary judgment on January 5, 2018, in which he opposes the motion.  (ECF No. 28).  On

January 29, 2018, Heritage filed a reply to McCracken's response. (ECF No. 29). The Court took this matter under advisement on February 1, 2018.

## Jurisdiction

The District Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (I), and (J).

## Analysis

### *Summary Judgment Standard*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). FED. R. BANK. P. 7056 incorporates FED. R. CIV. P. 56 in adversary proceedings. A party seeking summary judgment must demonstrate the absence of a genuine dispute of material fact by establishing the absence of evidence supporting an essential element of the non-movant's case. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009). A genuine dispute of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. *Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In cases involving the interpretation of a contract, summary judgment is only appropriate where the language of the contract is unambiguous. *See Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1192 (2d Cir. 1996); *Cooper Indus., LLC v. Precision Castparts Corp.*, 2016 WL 4939565, at *6 (S.D. Tex. Sept. 14, 2016).

A court views the facts and evidence in the light most favorable to the non-moving party at all times. *Ben-Levi v. Brown*, 136 S. Ct. 930 (2016). Nevertheless, the Court is not obligated

to search the record for the non-moving party's evidence. *Keen v. Miller Envtl. Grp., Inc.*, 702 F.3d 239, 249 (5th Cir. 2012). "Summary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015), *cert. denied*, 136 S. Ct. 1715 (2016).

A party asserting that a fact cannot be or is genuinely disputed must support that assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support that fact. FED. R. CIV. P. 56(c)(1). The Court need consider only the cited materials, but it may consider other materials in the record. FED. R. CIV. P. 56(c)(3). The Court should not weigh the evidence. *Wheat v. Fla Par. Juvenile Justice Comm'n*, 811 F.3d 702, 713 (5th Cir. 2016). A credibility determination may not be part of the summary judgment analysis. *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014). However, a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. FED. R. CIV. P. 56(c)(2). Moreover, the Court is not bound to search the record for the non-moving party's evidence of material issues. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014).

"The moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 536 (5th Cir. 2015). The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence entitling the movant to judgment at trial.  *Celotex Corp. v. Cattrett*, 477 U.S. 317, 326 (1986).  Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine dispute of material fact.  FED. R. CIV. P. 56(c)(1); *Celotex*, 477 U.S. at 322–24.  The non-moving party must cite to specific evidence demonstrating a genuine dispute.  FED. R. CIV. P. 56(c)(1); *Celotex*, 477 U.S. at 324.  The non-moving party must also "articulate the manner in which that evidence supports that party's claim."  *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010).  Even if the movant meets its initial burden, the motion should be granted only if the non-movant cannot show a genuine dispute of material fact.

If the non-movant bears the burden of proof on an issue, the movant must show the absence of sufficient evidence to support an essential element of the non-movant's claim.  *Celotex*, 477 U.S. at 325.  Upon an adequate showing of insufficient evidence, the non-movant must respond with sufficient evidence to support the challenged element of its case.  *Id.* at 324.  The motion should be granted only if the non-movant cannot produce evidence to support an essential element of its claim.  *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

*Nondischargeability under § 523(a)(2)(B)*

Pursuant to § 523 of the Bankruptcy Code, a debt is non-dischargeable if the debtor obtained:

> money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . (B) use of a statement in writing--(i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive . . . .

> 11 U.S.C. § 523(a)(2)(B).

Determining the existence of these elements is a question of fact that the creditor must prove by a preponderance of the evidence. *Matter of Norris*, 70 F.3d 27, 29 (5th Cir. 1995).

Heritage argues in support of its motion for summary judgment that McCracken's debt to it is nondischargeable under § 523(a)(2)(B) because:

i. McCracken secured the loans from Heritage through the disclosure of his tax returns and financial statements;

ii. McCracken made multiple misrepresentations to Heritage, including failing to list all of his liabilities on his disclosed financial statements and representing that he owned certain numbers of cattle when he did not;

iii. McCracken's disclosed tax returns and financial statements address his financial condition because they include information on his assets, liabilities, and net worth;

iv. Heritage relied on the value and number of McCracken's cattle listed within his financial statements and tax returns, which was reasonable because Heritage followed normal business practices in extending the credit to McCracken, had previously dealt with McCracken with no issue, and the statements did not alert Heritage to any issue with its collateral; and

v. McCracken caused Heritage to rely on his statements with an intent to deceive, as inferred from his disclosure of false financial information to Heritage and his lack of evidence proving that the numbers within that information are accurate. (ECF No. 23 at 21–28).

In response to Heritage's § 523 claim, McCracken argues that Heritage is precluded from establishing reasonable reliance upon his disclosed financial statements because, as it admits, it knew McCracken was untrustworthy before executing the June 2016 note. (ECF No. 28 at 7). For example, as stated above, Heritage learned in approximately April 2016 that McCracken failed to disclose Prosperity Bank's first lien on McCracken's cattle. (ECF No. 28 at 7; *see* ECF No. 23 at 7). McCracken claims Heritage's knowledge of his dishonest behavior gave rise to a duty on the part of Heritage to investigate McCracken's financial statements and tax returns

before executing the June 2016 note. (ECF No. 28 at 7). However, Heritage's evidence fails to illustrate any such inquiry. (ECF No. 28 at 7; *see* ECF No. 23 at 7; ECF No. 23-30 at 3).

Based upon Heritage's submitted evidence—including McCracken's financial statements and tax returns—and McCracken's failure to dispute that evidence, the Court finds no genuine dispute of material fact as to the nondischargeability of McCracken's debt to Heritage under § 523(a)(2)(B).

*I. Use of a statement in writing*

Section 523(a)(2)(B) requires that a statement respecting the debtor's financial condition be in writing in order to make a debt nondischargeable under the section. § 523(a)(2)(B); *In re Sharpe*, 351 B.R. 409, 422 (Bankr. N.D. Tex. 2006). In order to fall within § 523(a)(2)(B), the writing must have been written, signed, or adopted and used by the debtor. 4 COLLIER ON BANKRUPTCY, ¶ 523.08[2][a] (Richard Levin & Henry J. Sommer eds., 16th ed.) (citing *In re Batie*, 995 F.2d 85 (6th Cir. 1993); *Engler v. Van Steinburg*, 744 F.2d 1060 (4th Cir. 1984)). Written statements evidencing a debtor's financial condition may include "balance sheets, income statements, statements of changes in overall financial position, or income and debt statements that present the debtor or insider's net worth, overall financial health, or equation of assets and liabilities . . . ." *In re Bacino*, 2015 WL 9591904, at *17 (B.A.P. 9th Cir. Dec. 31, 2015). Overall, "the writing must be a complete or comprehensive statement regarding a debtor's income and expenses." *Id.*

The parties agree that McCracken submitted his financial statements and tax returns to Heritage as part of his applications for credit. (ECF No. 23 at 2–11; ECF No. 28 at 1–6). Heritage attached these financial documents to its motion for summary judgment. (*See* ECF No. 2; ECF No. 10; ECF No. 17; ECF No. 23; ECF No. 25; ECF No. 26; ECF No. 27). Accordingly,

no genuine dispute exists as to this element.

*II. Use of a statement in writing that is materially false*

Section 523(a)(2)(B)(i) requires that the written statement used to obtain a debt be materially false.  § 523(a)(2)(B)(i).  A materially false statement is one that "paints a substantially untruthful picture of a financial condition by misrepresenting information of the type which would normally affect the decision to grant credit." *In re Nance*, 70 B.R. 318, 321 (Bankr. N.D. Tex. 1987) (citing *In re Denenberg*, 37 B.R. 267 (Bankr. D. Mass. 1983)).  "[I]n determining whether a false statement is material, a relevant although not dispositive inquiry is 'whether the lender would have made the loan had he known the debtor's true situation.'" *Matter of Jordan*, 927 F.2d 221, 224 (5th Cir. 1991), *overruled by Matter of Coston*, 991 F.2d 257 (5th Cir. 1993) (citing *In re Bogstad*, 779 F.2d 370, 375 (7th Cir. 1985)).  Subjective reliance is not dispositive of materiality.  *In re Slonaker*, 269 B.R. 595, 603 (Bankr. N.D. Tex. 2001).  A document qualifies as materially false if it contains information causing it to be substantially inaccurate or omits relevant information.  *Id.* at 602–03; *see also Matter of Jordan*, 927 F.2d at 224.

The financial statements and tax returns used by McCracken to obtain credit from Heritage are clearly false.  As illustrated through Heritage's evidence and arguments, these financial documents contained various misrepresentations as to McCracken's assets and liabilities, including:

> i. The omission of certain of McCracken's liabilities, such as his debt to Prosperity Bank;
>
> ii. The value of his cattle; and
>
> iii. The representation that McCracken owned 129 head of cattle as of August 30, 2016.  (ECF No. 23 at 22; ECF No. 23-2; ECF No. 23-17; ECF No. 23-23; ECF No. 23-24; ECF No. 23-30 at 2; ECF No. 23-32 at 2; ECF No. 23-33 at 2).

McCracken failed to submit any evidence demonstrating a genuine dispute as to the falsity of the financial documents that he produced in order to obtain credit from Heritage. (*See* ECF No. 28-1; ECF No. 28-2; ECF No. 28-3; ECF No. 28-4; ECF No. 28-5; ECF No. 28-6; ECF No. 28-7).

The false financial documents produced by McCracken were also material. As stated by Heritage and illustrated by its evidence, these documents caused Heritage to believe that McCracken had sufficient cattle that were valuable enough to cover McCracken's debt. (ECF No. 23 at 7; ECF No. 23-30 at 3). Relying on this information, Heritage extended credit to McCracken multiple times, including in June 2016. As stated by Heritage's Vice President of Lending at the time of these loans, Angela Dees, Heritage would not have extended any such credit to McCracken had it known that the value of McCracken's cattle were insufficient to secure the total debt owed. (ECF No. 23-30 at 3).

McCracken failed to submit any evidence demonstrating a genuine dispute as to the materiality of his false financial documents. (*See* ECF No. 28-1; ECF No. 28-2; ECF No. 28-3; ECF No. 28-4; ECF No. 28-5; ECF No. 28-6; ECF No. 28-7). Accordingly, no genuine dispute exists as to this element.

*III. Use of a statement in writing respecting the debtor's financial condition*

Section 523(a)(2)(B)(ii) requires that the written statement used to obtain a debt relate to a debtor's financial condition. § 523(a)(2)(B)(ii). Financial statements that include information on a debtor's assets, liabilities, and net worth, as well as a properly-completed tax return filed with the IRS, qualify as written statements respecting the debtor's financial condition. *In re Robertson*, 570 B.R. 352, 366 (Bankr. D. Utah 2017) (referring to tax returns); *In re Wallace*, 2013 WL 5442074, at *5 (Bankr. N.D. Tex. Sept. 27, 2013) (referring to financial statements).

McCracken's financial statements reference his assets and liabilities. (*See* ECF No. 23-2; ECF No. 23-17; ECF No. 23-23). Additionally, the tax returns McCracken produced to Heritage—which included Federal Asset Reports and Collateral Lists for tax years 2013, 2015, and 2016—also reference McCracken's assets and liabilities. (ECF No. 23-10; ECF No. 23-25; ECF No. 23-26; ECF No. 23-27). McCracken does not dispute the relevance of these financial documents. (ECF No. 28 at 1–6). Accordingly, no genuine dispute exists as to this element.

*IV. Use of a statement in writing on which the creditor reasonably relied*

Section 523(a)(2)(B)(iii) requires that the written statement used to obtain a debt be reasonably relied on by the creditor to whom the debtor is liable for that debt. § 523(a)(2)(B)(iii). In order for this element to be satisfied, the creditor must have actually relied on the written statement, and that reliance must have been reasonable. *Field v. Mans*, 516 U.S. 59, 68 (1995). Partial reliance on a written statement is sufficient to satisfy this element. *In re Slonaker*, 269 B.R. 595, 606 (Bankr. N.D. Tex. 2001). The reasonableness of a creditor's reliance is a factual determination that "should be judged in light of the totality of the circumstances." *Matter of Coston*, 991 F.2d 257, 261 (5th Cir. 1993). As part of this determination, a bankruptcy court may consider such factors as: the existence of previous business dealings between the debtor and creditor that gave rise to a relationship; the existence of any "red flags" that would have alerted an ordinarily prudent lender to the possibility that the written statements relied upon were inaccurate; and whether a minimal investigation into the written statements would have revealed their inaccuracy. *Id.* "A creditor is not required to assume that a debtor is lying or misrepresenting facts" in its written statements. *In re Morrison*, 361 B.R. 107, 123 (Bankr. W.D. Tex. 2007), *subsequently aff'd*, 555 F.3d 473 (5th Cir. 2009).

Heritage actually relied on McCracken's financial statements and tax returns, as seen by

its extensions of credit in 2016 and the statement of Angela Dees that Heritage would not have extended any such credit to McCracken had it known that the value of McCracken's cattle was insufficient to secure the total debt owed. (ECF No. 23 at 2, 5–7; ECF No. 23-3; ECF No. 23-11; ECF No. 23-14; ECF No. 23-19; ECF No. 23-30 at 3). McCracken failed to submit any evidence demonstrating a genuine dispute as to Heritage's actual reliance on his financial documents. (*See* ECF No. 28-1; ECF No. 28-2; ECF No. 28-3; ECF No. 28-4; ECF No. 28-5; ECF No. 28-6; ECF No. 28-7).

Heritage not only actually relied on McCracken's financial documents but also reasonably relied on those documents. Heritage does not claim business dealings with McCracken prior to executing the June 2014 note and subsequent related notes; however, prior to joining Heritage as its Vice President of Lending, Angela Dees had previous business dealings with McCracken while serving in the same capacity at First State Bank. (ECF No. 23-30 at 1–2). Dees testified that she was unaware of any issues or defaults with McCracken's First State Bank loan. (ECF No. 23-30 at 2). After she left First State Bank to become Heritage's Vice President of Lending, McCracken agreed to move his loan with First State Bank to Heritage, continuing McCracken's relationship with Dees. (ECF No. 23-30 at 2). Based upon this uneventful business relationship between Dees and McCracken, this factor weighs in favor of Heritage's reasonable reliance.

While Dees' previous business dealings with McCracken gave rise to no red flags regarding the accuracy of McCracken's produced financial statements and tax returns, such a red flag did arise from Heritage's and McCracken's credit relationship. As pointed out by McCracken, Heritage learned of his alleged concealment of Prosperity Bank's lien on his cattle in April 2016. (ECF No. 23 at 7; ECF No. 28 at 7; ECF No. 23-30 at 3). Yet, even in the face of

this red flag calling into question McCracken's trustworthiness, Heritage agreed to enter into the June 2016 note with McCracken. (ECF No. 23 at 7; ECF No. 23-19). McCracken asserts that this red flag consequently placed a burden on Heritage to inquire further into his financial statements and tax returns in order to determine their accuracy, which it failed to do. (ECF No. 28 at 7; ECF No. 28-7 at 3).

The alleged concealment of Prosperity Bank's lien on McCracken's cattle did alert Heritage to the potential unreliability of McCracken's financial statements and tax returns. However, when faced with this red flag, Heritage took multiple steps to discern the accuracy of these financial documents. Prior to executing the June 2016 note, Heritage requested and obtained McCracken's May 6, 2016 financial statement and 2015 tax return. (ECF No. 29 at 7; ECF No. 23-23; ECF No. 23-24; ECF No. 23-25). These documents confirmed that the value of McCracken's cattle at that time covered both Prosperity Bank's lien and Heritage's lien. (ECF No. 29 at 8; ECF No. 23-25). These documents, however, did not reflect any sale of the cattle or remittance of any sale proceeds to Heritage. (ECF No. 29 at 8; ECF No. 23-25). Additionally, McCracken confirmed in person the number of cattle he owned—129—with Angela Dees on or about August 30, 2016, one day before the June 2016 note was actually funded by Heritage. (ECF No. 23-30 at 3). This number of cattle does not reflect any cattle sold in 2015. McCracken does not dispute these facts. (ECF No. 28 at 3). Heritage's investigation thus failed to reveal any of the inaccuracies in the values of McCracken's assets or liabilities listed within his financial statements and tax returns.

Even a more robust investigation into the number and value of McCracken's cattle would have failed to reveal the inaccuracies in his financial documents. For example, although McCracken sold most of the cattle securing his debt to Heritage in June 2015, he did so without

notice to Heritage and the cattle were not removed from the pasture where they were located prior to their sale. (ECF No. 23-30 at 4; EF No. 23-31 at 1–2). Heritage consequently could not have discovered that McCracken sold the cattle by looking at either his disclosed financial statements or the actual cattle in the pasture.

Without any additional evidence or argument from McCracken refuting Heritage's submitted proof, no genuine dispute exists as to this element.

*V. Use of a statement in writing that the debtor caused to be made with an intent to deceive*

Section 523(a)(2)(B)(iv) finally requires that the written statement used to obtain a debt be made by the debtor with an intent to deceive the creditor. § 523(a)(2)(B)(iv). Unless a debtor admits to having an intent to deceive a creditor, a court looks at the totality of the circumstances to infer whether the statement was knowingly false or made with a "[r]eckless disregard for the truth or falsity of [the] statement combined with the sheer magnitude of the resultant misrepresentation . . . ." *In re Morrison*, 555 F.3d 473, 482 (5th Cir. 2009) (quoting *In re Miller*, 39 F.3d 301, 305 (11th Cir. 1994)). The court may consider such factors as the debtor's knowledge of and experience in financial matters, as well as whether the debtor exhibited a clear pattern of purposeful conduct when inferring deceitful intent of a debtor. *In re Morrison*, 361 B.R. 107, 124 (Bankr. W.D. Tex. 2007), *subsequently aff'd*, 555 F.3d 473 (5th Cir. 2009).

Once a creditor establishes that a debtor had actual knowledge of the false statement, the debtor cannot overcome the inference of the intent to deceive with unsupported assertions of honest intent. *Id.* (quoting *In re Bohr*, 271 B.R. 162, 169 (Bankr. W.D. Mo. 2001)). Instead, "where a debtor testifies as to her subjective intent, the bankruptcy court must make a credibility determination, considering the debtor's testimony, along with other objective circumstantial evidence of the debtor's subjective intent." *In re Mercer*, 246 F.3d 391, 409 (5th Cir. 2001). A

debtor's intent to deceive may be inferred from his use of a false financial statement to obtain credit. *Matter of Young*, 995 F.2d 547, 549 (5th Cir. 1993).

McCracken has not admitted that he knowingly caused his financial statements to be false. Nonetheless, evidence exists from which to infer McCracken's intent to deceive. McCracken blatantly failed to disclose all of his liabilities and the value of his cattle on each of his produced financial statements even though he had provided Prosperity Bank a lien on his cattle and sold most of his cattle in June 2015. (ECF No. 23-2; ECF No. 23-17; ECF No. 23-23; ECF No. 23-30 at 4; ECF No. 23-31 at 1). Additionally, McCracken failed to disclose the cattle he sold on his 2015 tax return. (ECF No. 23-24). These misrepresentations and omissions within McCracken's financial documents show McCracken's clear pattern of knowingly or recklessly deceitful conduct. When coupled with the fact that these false financial documents caused Heritage to extend tens of thousands of dollars in credit to him, McCracken's use of his materially false financial documents gives rise to an inference that he supplied those documents intending to deceive Heritage.

McCracken failed to submit any evidence demonstrating a genuine dispute as to whether he caused his materially false financial documents to be made with an intent to deceive Heritage. The Court has carefully reviewed McCracken's response to the summary judgment motion (ECF No. 28). Most tellingly, McCracken does not deny that he intended to deceive the Bank. (ECF No. 28 at 1–9). Instead, McCracken's affidavit indicates that he was not keeping up with his financial affairs because he was absent from the State. (ECF No. 28 at 2). His affidavit never states that he held an honest belief that his financial representations to Heritage were accurate. (ECF No. 28 at 1–3). Accordingly, no genuine dispute exists as to this element.

Because no genuine dispute exists as to the existence of the § 523(a)(2)(B) elements in

this proceeding, summary judgment is granted as to this nondischargeability claim.

*Nondischargeability under § 727(a)(3)*

Heritage alternatively argues that McCracken's debt to it is nondischargeable under § 727(a)(3) because McCracken failed to keep or preserve any financial records related to the disposition of the cattle he claims to have owned. (ECF No. 23 at 29).

Pursuant to 11 U.S.C. § 103(b), § 727 is inapplicable to chapter 13 bankruptcy cases. Summary judgment is accordingly denied as to this nondischargeability claim.

## Conclusion

The Court will issue an Order consistent with this Memorandum Opinion.

SIGNED **March 19, 2018.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE